**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 20 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

SABINO HIDALGO, JR.,

      Plaintiff-Appellant,

vs.

FAGEN, INC.; KWS
MANUFACTURING CO., INC.;
DAVID KAMINSKI; DARYL
GILLUND,

      Defendants - Appellees.

No. 99-1033

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-WM-672)

Eduardo M. Madrid (and George G. Johnson, Jr., Peter M. Johnson, and Andrew
R. Johnson, Denver, Colorado, with him on the briefs), Diamond Bar, California,
for Plaintiff-Appellant.

Diane Vaksdal Smith (and Scott J. Eldredge, with her on the briefs), Burg,
Simpson, Eldredge & Hersh, P.C., Englewood, Colorado, for Defendant-Appellee
KWS Manufacturing, Inc.

Wendelyn K. Walberg, Walberg, Dagner & Tucker, P.C., Englewood, Colorado,
for Defendant-Appellee Fagen, Inc.

Before **SEYMOUR**, Chief Judge, **TACHA**, and **KELLY**, Circuit Judges.

**KELLY**, Circuit Judge.

Plaintiff-Appellant, Mr. Sabino Hidalgo, suffered grievous injuries to his arm while cleaning a screw conveyor at the Excel meat packing plant in Fort Morgan, Colorado. His arm ultimately required amputation. He brought suit against KWS Manufacturing, Inc. ("KWS"), the company that manufactured the component parts of the screw conveyor; Fagen, Inc. ("Fagen"), the contractor hired to construct the conveyor system; and two individuals, David Kaminski, who oversaw the construction of the conveyor, and Daryl Gillund, Fagen's chief financial officer. The district court granted summary judgment in favor of KWS, Mr. Kaminski and Mr. Gillund. The district court granted partial summary judgment in favor of Fagen on the claims that it was strictly liable for injuries caused by the conveyor, and it had breached express and implied warranties concerning the screw conveyor. The matter went to trial on Mr. Hildago's negligence claims against Fagen and the jury returned a verdict in favor of Fagen.

Mr. Hidalgo appeals from the district court's grant of summary judgment in favor of KWS on his strict liability claims, arguing that (1) he did, in fact, meet his burden by demonstrating a genuine issue of material fact, and (2) the district court applied the wrong standard, requiring him to prove that the parts in question were defective when they left KWS's control. He also appeals from the grant of summary judgment in favor of Fagen on his strict liability claim, arguing that the

district court erred in deciding that strict liability principles do not apply to fixtures or improvements to real property under Colorado law.

Mr. Hidalgo seeks a new trial on several grounds. He argues that the district court improperly denied his Batson challenge to Fagen's peremptory strikes, thereby permitting Fagen to exclude all Hispanics from the jury. Next, he challenges various evidentiary rulings. He contends that the district court incorrectly (1) limited the testimony of his expert witness; (2) permitted Fagen's expert witness to testify as to compliance with OSHA standards; (3) permitted references to worker's compensation, in violation of its prior ruling; and (4) permitted a witness for Fagen to speculate about the customary practices of those employees who clean screw conveyors at the plant. Finally, Mr. Hidalgo contends that a new trial is warranted because there was jury tampering. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

A.    Strict Liability Claim Against KWS

Mr. Hidalgo first challenges summary judgment in favor of KWS on his strict liability claim. He contends that inclusion of a report by an engineer, John Sevart, was sufficient to show a genuine issue of material fact regarding a design defect in the screw conveyor system supplied by KWS. He further contends that the district court applied the wrong summary judgment standard, impermissibly requiring him to demonstrate that the product was defective when it left KWS's

control.

We review summary judgment rulings de novo.  See Southwestern Bell Wireless, Inc. v. Johnson County Bd. of County Comm'rs, 199 F.3d 1185, 1189 (10th Cir. 1999).  Summary judgment is appropriate if the moving party demonstrates that there is "'no genuine issue as to any material fact' and that it is 'entitled to a judgment as a matter of law.'"  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (quoting Fed. R. Civ. P. 56(c)).  The moving party bears the initial burden of showing that there are no genuine disputed issues of fact.  See id.  If the movant does not bear the ultimate burden of persuasion at trial, he may make this showing by identifying a lack of evidence on any essential element of the nonmovant's claim.  See id. at 671.  If the nonmovant bears the ultimate burden of persuasion at trial, he may not rest on his pleadings, rather he must set forth specific facts that would be admissible as evidence and from which a rational trier of fact could find for him at trial.  See Fed. R. Civ. P. 56(e).

As noted, the KWS screw conveyor was a component part sold to Fagen used in the meat rendering system built for the Excel plant.  For Mr. Hidalgo to succeed on his strict liability claim against KWS for the screw conveyor, he was required to demonstrate that the part itself was defective, not the final product.[1]

---

[1] Mr. Hildago is correct that the district court articulated the wrong standard for success on a strict liability claim against a component part manufacturer under Colorado law.  The district court stated that to succeed, Mr.

- 4 -

See Bond v. E.I. Dupont De Nemours & Co., 868 P.2d 1114, 1119 (Colo. Ct. App. 1993). There is no evidence to this effect. Mr. Hildago did submit an expert report that discussed the screw conveyor as it functioned in the final meat rendering system. The report concluded that it was unreasonably dangerous, and that alternative designs would vitiate this condition. However, these largely unsupported conclusions do not allege defects in the component part standing on its own. Thus, summary judgment was proper. Moreover, no evidence suggests that KWS collaborated with Fagen in the design of the final meat rendering system, thereby exposing KWS to liability for system defects.

B.      Strict Liability Claims Against Fagen

Mr. Hidalgo next argues that the district court erred in granting summary judgment in favor of Fagen. Contrary to his assertions, Colorado has explicitly adopted the Restatement (Second) of Torts § 402A, which imposes strict liability in tort upon a manufacturer or seller for harm caused by a defective product which the manufacturer has placed into the stream of commerce. See Hiigel v.

---

Hidalgo would have to show that the part was defective "at the time it left the component part manufacturer's control." Aplt. App. 321. However, the Colorado Supreme Court explicitly rejected this standard in Blueflame Gas, Inc. v. Van Hoose, 679 P.2d 579, 590 (Colo. 1984). Colorado law instead requires a plaintiff to prove that the defect that rendered the product unreasonably dangerous occurred in the course of the manufacture/distribution process and before the plaintiff acquired the product. See id. Our de novo review employs the correct standard.

General Motors Corp., 544 P.2d 983 (Colo. 1975).  The Colorado Products Liability Act, Colo. Rev. Stat. §§ 13-21-401, et seq., defines "manufacturer," limits liability of sellers and distributors who are not manufacturers, and creates a presumption of non-defectiveness for products sold ten years or more before any claimed injuries.  Under Colorado law, the sine qua non of a strict liability claim is the "sale" of a "product."  See St. Luke's Hosp. v. Schmaltz, 534 P.2d 781, 784 (Colo. 1975).  Fagen moved for summary judgment on the grounds that the construction of the conveyor system was not the sale of a product.  It  attached evidence tending to show that it was a contractor, providing a service and incidental materials.  Fagen's summary judgment evidence included work agreements referring to Fagen as a "contractor," and a mechanics lien.

Colorado courts have been reticent about extending the doctrine of strict liability to the provision of services.  See Schmaltz, 534 P.2d at 784; see also Smith v. Home Light & Power Co., 734 P.2d 1051, 1056 (Colo. 1987) (affirming the view of the court of appeals that provision of a service cannot provide a foundation for imposition of strict products liability); Yarbro v. Hilton Hotels Corp., 655 P.2d 822, 828 (Colo. 1982) ("[T]he tort rationale for product liability does not easily extend to cover the providing of services.").

Moreover, as both parties recognize, the Colorado Supreme Court has not extended the principles of product liability to real property improvements.  The

Colorado Products Liability Act is silent on this point. In the context of products liability, Colorado law draws a sharp distinction between improvements to real property and "products." See Enright v. City of Colorado Springs, 716 P.2d 148, 150 (Colo. Ct. App. 1985) (holding that the trial court improperly applied the Colorado Products Liability Act to an improvement to real property for purposes of the statute of limitations). In viewing the summary judgment evidence on this point, it appears to us that Mr. Hildago has not come forward with sufficient evidence to demonstrate that Fagen sold a product, rather than sold services, resulting in an improvement to real property.

C.    Batson Challenges

During voir dire, Fagen exercised two peremptory strikes against two apparent Hispanic women, Ms. Martinez and Ms. Gonzales (in that order). Upon Fagan's striking Ms. Gonzales, Mr. Hidalgo objected that the peremptory strike was racially motivated, reminding the court that she was one of two Hispanics on the jury. When Fagen struck Ms. Martinez earlier, Mr. Hidalgo did not object. The district court inquired as to Fagan's justification for exercising a peremptory strike on Ms. Gonzales. Counsel for Fagen responded:

> Your honor, when I approached this jury and this jury selection, one of the fundamental principles I was looking for is I prefer older people, rather than younger people. I would prefer men, rather than women. And when it came down to the third choice, I saw – I had a choice between two, and I chose the older – to keep the older and strike the

> younger because I think older people who have had trauma in their lives understand about getting on with it and I think Mr. Hidalgo has not. And therefore, that's why I prefer age over youth.

Aplt. App. at 655-56. The trial court further questioned whether or not Ms. Gonzales' Hispanic background motivated the strike. Counsel for Fagen answered:

> No. Quite frankly, I had some concerns about it; but I think she's intelligent. And quite frankly, I want an intelligent jury....

Id. The trial court was satisfied that these responses were sufficiently race neutral, and rejected Mr. Hidalgo's challenge. Mr. Hidalgo made no further challenge, either based on race or gender discrimination. See Aplt. App. at 656.

On appeal, Mr. Hidalgo argues that the court should have (1) further pursued Fagen's remarks regarding Ms. Gonzales' intellect vis-a-vis her Hispanic background; (2) made independent inquiries into Fagen's justification for striking Ms. Martinez; (3) required Fagen to justify its exclusion of all Hispanics from the jury; and (4) raised, sua sponte, a Batson challenge against Fagen for its gender discriminatory justification for striking Ms. Gonzales. We deal with each argument in turn.

The Batson analytic is well settled. Once the party raising the Batson challenge establishes a prima facie case of racial discrimination, the proponent of the peremptory strike must submit a racially neutral explanation. The party

raising the challenge must then be given the opportunity to show pretext.  See

Davis v. Baltimore Gas & Electric Co., 160 F.3d 1023, 1028 (4th Cir. 1998).

Subsequently, the trial court must decide whether the party raising the Batson

claim has proven purposeful discrimination.  See Purkett v. Elem, 514 U.S. 765,

767-68 (1995).  The party bringing the Batson challenge always carries the

ultimate burden of persuasion.  See Hurd v. Pittsburg State Univ., 109 F.3d 1540,

1546 (10th Cir. 1997) (quoting Elem, 514 U.S. at 768).  In our review of the

district court's disposition of the Batson claim, we analyze Fagen's proffered

racially neutral explanation as a legal issue, de novo.  See United States v.

Johnson, 941 F.2d 1102, 1108 (10th Cir. 1991).  We review the trial court's

ultimate finding that there was no intentional discrimination for clear error.  See

id.

We are satisfied that Fagen's explanation was race-neutral.  A neutral

explanation means an explanation based on something besides the race of the

juror.  See Hernandez v. New York, 500 U.S. 352, 360 (1991).  We look

specifically at the facial validity of the explanation.  Unless discriminatory intent

is inherent in the justification, the reason offered will be deemed race neutral.

See id.

A fair reading of the explanation for the strike is that Fagen's counsel

struck Ms. Gonzales because of her youth.  We have held this to be an acceptable

race-neutral justification for exercising a peremptory strike. See United States v. Joe, 8 F.3d 1488, 1499 (10th Cir. 1993). Counsel's comment in response to the court's follow up does not evince an inherent discriminatory intent. As the Supreme Court made clear in Hernandez, discriminatory purpose in this context has a fixed meaning in the constellation of equal protection jurisprudence. That is, "discriminatory intent" implies that the decisionmaker chose a course of action "'because of,'" not merely "'in spite of,'" its adverse effects upon an identifiable group. Hernandez, 500 U.S. at 360 (quoting Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 279 (1979)). When the trial court asked Fagen whether Ms. Gonzales' Hispanic background influenced his decision to strike her, he responded unequivocally that it did not. The district court's finding on this aspect of the Batson claim is not clearly erroneous.

We are unpersuaded by the remainder of Mr. Hidalgo's Batson arguments. The essence of these arguments is that the court should have independently required Fagen's counsel to justify the striking of all the Hispanics from the venire and should have raised Batson claims based upon the strike of Ms. Martinez and the remark by Fagen's counsel that he "preferred men to women."

Implicit in Mr. Hidalgo's Batson challenge to the striking of Ms. Gonzales, was the argument that the result was the removal of all Hispanics from the venire:

> Your Honor, there has been a challenge to Juror No. 1, Ms. Gonzales, who is one of two Hispanics on the jury, the

only Spanish-speaking individual. Under <u>Batsen v. Kentucky</u> [sic], I would challenge that challenge.

Aplt. App. at 655. The district court then followed the proper procedure.

Finally, Mr. Hidalgo argues that he is entitled to relief because the trial court failed to raise, sua sponte, a <u>Batson</u> claim when Fagen stated, in reference to his striking Ms. Gonzales, that one of his organizing principles of jury selection in the instant case was that he preferred male jurors to female ones. <u>See</u> <u>J.E.B. v. Alabama Ex Rel. T.B.</u>, 511 U.S. 127, 143 (1994). Mr. Hidalgo failed to raise this objection at any point below. Thus, we review this claim for plain error only. <u>See</u> <u>United States v. Bedonie</u>, 913 F.2d 782, 794 (10th Cir. 1990). In the civil context, we will reverse only if the error is one that "seriously affect[s] 'the fairness, integrity or public reputation of judicial proceedings.'" <u>Glenn v. Cessna Aircraft Co.</u>, 32 F.3d 1462, 1464 (10th Cir. 1994). We are not persuaded that the trial court's failure to raise a <u>J.E.B.</u> claim in the instant case rises to this level. Thus, Mr. Hidalgo's claim for relief on this issue fails.

D.    <u>Evidentiary Rulings</u>

Evidentiary rulings are reviewed only for abuse of discretion. <u>See</u> <u>Webb v. ABF Freight Sys. Inc.</u>, 155 F.3d 1230, 1246 (10th Cir. 1998). Under this standard, we will not disturb the trial court's ruling unless we have a "'definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" <u>Boughton v.</u>

Cotter Corp., 65 F.3d 823, 832 (10th Cir. 1995) (quoting McEwen v. City of Norman, 926 F.2d 1539, 1553 (10th Cir. 1991)). Moreover, Mr. Hidalgo is entitled to a new trial only if the error affected his substantial rights. See Webb, 155 F.3d at 1246.

Because the only claim against Fagen at trial was negligence, the district court prohibited Mr. Hidalgo's expert witness, John Sevart, from testifying about design defects in the screw conveyor system, and 402A standards. See Aplt. App. at 424-25. Mr. Hidalgo contends that it is impossible to prove negligent installation without presenting evidence about design defect. This simply does not follow. Mr. Hidalgo's expert was permitted to testify about installation standards, and in this context was allowed to discuss the lack of safety features on the screw conveyor.

Mr. Hidalgo next contends that the trial court erroneously permitted one of Fagen's experts to testify that Fagen had complied with OSHA and other various safety standards. Mr. Hidalgo initially filed a motion in limine to exclude all OSHA evidence on the grounds that it was irrelevant and confusing. The trial court declined to rule on the motion, instead opting to make admissibility determinations as the issue arose. At trial, Mr. Hidalgo questioned his own witness on the issue of OSHA standards in regard to the installation of the screw conveyor. See Aplt. App. at 459. More importantly, however, Mr. Hidalgo failed

to renew the objections from his original motion in limine when Fagen's experts testified as to compliance with OSHA and other safety standards.  Where the trial judge has declined to rule on a motion in limine, and the objection to the evidence is not renewed at trial, the objection is waived.  See United States v. Mejia-Alarcon, 995 F.2d 982, 985-88 (10th Cir. 1993); McEwen, 926 F.2d at 1544-45 (10th Cir. 1991).

Mr. Hidalgo next argues that the trial court incorrectly admitted testimony regarding worker's compensation, in contravention of its prior ruling.  Mr. Hidalgo filed a motion in limine to exclude all reference to worker's compensation.  The trial court ruled:

> The motion to exclude worker's comp. file and benefits:
> The motion is granted in part and denied in part.  The – as
> I understand, there is an issue on failure to mitigate
> damages, including that the plaintiff has not taken
> advantage of different programs available to him.  And
> those questions can be asked, but the specific recovery by
> the plaintiff will not be allowed and again as appropriate
> may be a setoff to any damage recovery.

Aplt. App. at 557.  In support of his claim that this ruling was violated, Mr. Hidalgo notes testimony elicited by Fagen:  a reference to "maximum medical improvement," Aplt. App. at 700-703; a question about resources available to the Plaintiff, to which the witness responded "Are you talking about worker's comp?" Aplt. App. at 709; and testimony of Plaintiff's expert regarding resources available that made no reference whatsoever to worker's compensation.  Aplt.

- 13 -

App. at 661. These incidental references do not violate the court's ruling; there are no references to specific recovery by the Plaintiff.

We are likewise unconvinced that Mr. Hidalgo is entitled to a new trial because the trial court permitted Fagen's witness, Mr. Reed, to testify that during his tenure at the plant, he had frequently observed employees cleaning the screw conveyor while it was activated. Allowing this evidence was not an abuse of discretion. Moreover, Mr. Hidalgo brought out on cross examination that Mr. Reed had not witnessed the accident itself, and had no firsthand knowledge of the specifics surrounding it.

Finally, Mr. Hidalgo argues that he is entitled to relief because of jury tampering. The sole basis for this allegation is that an exhibit (D-59) was erroneously included among jury materials distributed at trial. The exhibit was a handwritten note that read "Plaintiff's Work. Comp. File - to be produced via subpoena at trial." Aplt. App. at 723. The record does not reflect when the exhibit was distributed, nor who was the responsible party for its distribution. One juror later testified that it was not discussed at all in deliberations and that it did not influence the jury's decisionmaking. Aplt. App. at 671, 673. Of course, if jurors are provided exhibit books during trial, or if exhibits are given to the jury during deliberation, care must be taken to insure that only properly admitted exhibits are included. That frequently will necessitate a careful review by both

parties, and the court, of what was and was not admitted during trial. That said, while it is unfortunate that this exhibit found its way to the jury, no prejudice has been shown. Thus, a new trial on this ground given these facts would be completely unwarranted.

AFFIRMED.