**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 31, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VICTOR MANUEL LOPEZ-GARCIA,
also known as Victor Ismael Lopez,

Defendant-Appellant.

No. 06-7087
(D.C. No. 06-CR-6-RAW)
(E.D. Okla.)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERTO ANTONIO TICAS,

Defendant-Appellant.

No. 06-7090
(D.C. No. 06-CR-6-RAW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **MURPHY** and **HOLMES**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Roberto Antonio Ticas and Victor Manuel Lopez-Garcia were convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2. They now appeal their convictions, arguing that the government improperly struck a potential juror from the venire because she was Hispanic. Mr. Ticas individually argues that his conviction was obtained with evidence tainted by an unconstitutional search and seizure. Mr. Lopez-Garcia contends there is insufficient evidence to sustain his conviction. Because common facts and issues are presented in the appeals, we consolidated these cases and treat all arguments in a single order and judgment. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

**I.**

On December 28, 2005, Oklahoma Highway Patrol simultaneously stopped two Ford Taurus automobiles on Interstate 40 for speeding. The first Taurus was brown; the second, blue. Mr. Ticas was driving the first car while Mr. Lopez-Garcia was a passenger in the second. Occupants of the vehicles acknowledged that the two cars were traveling together. Mr. Ticas indicated that Mr. Lopez-Garcia was a family member, while his daughter, who rode as a passenger with him, referred to Mr. Lopez-Garcia as a friend. Officers obtained consent to search both vehicles, and when no contraband was found in the first car, Mr. Ticas was given a written warning and allowed to proceed on his way.

After Mr. Ticas left, the officer dealing with Mr. Lopez-Garcia walked around the exterior of the blue Taurus with a drug-sniffing canine. The dog alerted to the vehicle near the rear passenger door where police discovered a hidden compartment containing nine bundles of cocaine. The compartment was located beneath the car, near the rear axle. It was engineered to be opened electronically, and although wires ran under the carpeting of the car's interior, there was no obvious switch in the car. Once officers found the cocaine and realized the cars were similar and traveling together, they radioed another officer to again stop the first brown Taurus if it was observed committing a traffic violation.

Shortly thereafter, Officer Adam Wood located the brown Taurus and saw it driving too close to a commercial vehicle. On this basis, he stopped the vehicle a second time. Officer Wood contacted Mr. Ticas and decided to write him a warning for the violation. Meanwhile, Officer Ty Owen, who had conducted the first stop, arrived on scene and walked around Mr. Ticas's car with a drug-sniffing dog. As with the blue Taurus earlier, the dog alerted to the rear of the car where a similar hidden compartment containing eight bundles of cocaine was discovered. Both Mr. Ticas and Mr. Lopez-Garcia were arrested and convicted based on these events.

On appeal, appellants raise one issue jointly and two issues individually. They both argue the government used a peremptory challenge to improperly

remove a potential juror from the venire based upon her race. Mr. Ticas also claims his Fourth Amendment rights were violated because police lacked probable cause to initiate the second traffic stop. Lastly, Mr. Lopez-Garcia challenges the sufficiency of the evidence upon which his conviction was obtained.

## II.

### A. Peremptory Challenge

We first consider appellants' contention that the government improperly removed a prospective juror, Ms. Mendoza, based on her race. "We review *de novo* whether the [government's] explanation [for striking a potential juror] is facially race neutral. We then review the district court's ruling that the [government] did not intend to discriminate under the clearly erroneous standard." *United States v. Sneed*, 34 F.3d 1570, 1580 (10th Cir. 1994) (citation omitted).

The government may not use peremptory challenges to exclude potential jurors based solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). "However, [u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *United States v. Davis*, 40 F.3d 1069, 1077 (10th Cir. 1994) (quotation omitted).

Here, the government explained that it was striking Ms. Mendoza because she was from Stilwell, Oklahoma, appeared to be very young, and had legal proceedings initiated against her due to problems paying a hospital bill. The government also indicated that it had "to start with somebody someplace and this

method [of jury selection] require[d it] to get rid of people." R. Vol. 3, at 100.

Additionally, the government noted that there was no indication that she was

Hispanic, but only that she had retained the name of her former husband.

This explanation is facially valid and race-neutral. *See Purkett v. Elem*,

514 U.S. 765, 768 (1995) (holding that proffered reason need not be "persuasive,

or even plausible," but must be facially valid). Although the government did not

elaborate as to why it excluded her because she was from Stilwell or experienced

financial troubles, these reasons do not evince an inherent discriminatory intent.

As for her age, we have held that youth is an acceptable race-neutral justification

for exercising a peremptory strike. *Hidalgo v. Fagen, Inc.*, 206 F.3d 1013, 1019

(10th Cir. 2000). Additionally, the government's recognition that there was no

indication that Ms. Mendoza was herself Hispanic demonstrates that appellants

failed to show she was removed as a member of a particular racial group. *See*

*United States v. Joe*, 8 F.3d 1488, 1498 (10th Cir. 1993) ("the defendant must

show . . . that the prosecution has exercised peremptory challenges to remove

members of a particular race from the venire"). Therefore, deferring to the trial

court's unique vantage point, we conclude that the circumstances of this voir dire

do not show purposeful discrimination.

## B. Search and Seizure

We next consider whether the district court correctly denied Mr. Ticas's

motion to suppress evidence obtained from the second search and seizure. He

contends the evidence from this second stop was tainted because officers had neither probable cause nor consent to search his vehicle once his initial detention ended. He further argues that the reason given by officers for initiating the second stop – following too closely to a commercial vehicle – was mere pretext and proves their lack of probable cause.

The district court upheld the second stop on two grounds: the first was Mr. Ticas's traffic violation of following too close to a commercial vehicle; the second was Officer Owen's reasonable suspicion that Mr. Ticas was in possession of a controlled substance based on the circumstances of the first stop. As for the ensuing search, the district court ruled that it was lawful because Officer Owen had a reasonable belief that Mr. Ticas possessed narcotics and the canine alerted to the car. We agree.

"When reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government, accepting the district court's factual findings unless clearly erroneous. Fourth Amendment reasonableness is reviewed de novo." *United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1305 (10th Cir. 2006) (quotation omitted).

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). A routine traffic stop, however,

is more analogous to an investigative detention than a custodial arrest. *Id.*

Consequently, we analyze such stops under the principles articulated in *Terry v.*

*Ohio*, 392 U.S. 1 (1968), "asking first whether the officer's action was justified at

its inception, and second whether it was reasonably related in scope to the

circumstances which justified the interference in the first place." *United States v.*

*Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (internal quotation marks

omitted).

Here, the second stop was plainly justified because it was based on an

observed traffic violation. *See United States v. Botero-Ospina*, 71 F.3d 783, 787

(10th Cir. 1995) ("a traffic stop is valid under the Fourth Amendment if the stop

is based on an observed traffic violation"). It was also independently valid based

on the totality of the circumstances that gave rise to Officer Owen's objectively

reasonable suspicion that Mr. Ticas was involved in illegal activity. *See United*

*States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993) ("If the officer wishes to

detain the driver for further questioning unrelated to the initial stop, the officer

must have an objectively reasonable articulable suspicion that illegal activity has

occurred or is occurring."). Officer Owen knew that Mr. Ticas was driving in

tandem with a similar Ford Taurus, that the other car was found with a hidden

compartment containing cocaine, and that Mr. Ticas had a close or familial

relationship with an occupant of the other car. These facts gave Officer Owen a

"particularized and objective basis for suspecting" that Mr. Ticas's car also had a

hidden compartment containing narcotics.  *Bradford*, 423 at 1157.  This suspicion, coupled with the canine alert, *see United States v. Klinginsmith*, 25 F.3d 1507, 1510 (10th Cir. 1994) (holding that canine alert gives rise to probable cause), provided ample probable cause to stop and search the vehicle. The district court was correct to deny the motion to suppress.

## C.  Sufficiency of the Evidence

Lastly, we consider whether Mr. Lopez-Garcia's conviction is supported by sufficient evidence.  We review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, a rational jury could have found the defendant guilty beyond a reasonable doubt.  *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).  "We consider both direct and circumstantial evidence, together with the reasonable inference to be drawn therefrom, but do not weigh conflicting evidence or consider the credibility of witnesses."  *Id.*

The government was required to prove beyond a reasonable doubt that Mr. Lopez-Garcia (1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute or dispense the controlled substance.  21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

Under sections 841(a)(1) and (b)(1)(A), possession can be either actual or constructive.  "Constructive possession may be established by circumstantial evidence and may be joint among several individuals."  *United States v.*

*McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000) (quotation omitted).

Constructive possession requires that the defendant knowingly have "ownership, dominion or control over the narcotics and premises where the narcotics are found." *Id.* (quotation omitted). Where the location of the narcotics is jointly occupied, "the government must present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998). There must be "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the contraband." *Id.* (alteration and internal quotation marks omitted).

The evidence submitted at trial sufficiently linked Mr. Lopez-Garcia to the cocaine found in the blue Ford Taurus. Not only was the car registered and insured under his name, but the evidence created a strong inference that he and Mr. Ticas were using the car in an on-going operation to transport narcotics from California throughout the country. Indeed, the jury heard testimony that six days earlier, Mr. Ticas and Mr. Lopez were stopped in the blue Taurus on Interstate 40 in North Carolina. Prior to that, on November 30, 2005, Mr. Lopez-Garcia was driving the blue Taurus on Interstate 40 near the east Texas border when he was stopped by Trooper Doug Acker. Trooper Acker testified that Mr. Lopez-Garcia produced insurance documents listing a man named Jorge Hernandez as the owner of the car and the primary insured. Documents also indicated that

Mr. Lopez Garcia shared the same California address as Jorge Hernandez, and the same Illinois address as Mr. Ticas. Significantly, business cards for George Hernandez were found in both cars, and Mr. Lopez-Garcia and Mr. Ticas both testified that they had been operating under the direction of Jorge Hernandez, who had on this occasion instructed them to drive the cars from Los Angeles to Chicago.

Aside from this evidence, direct evidence obtained from the Oklahoma stop was sufficient to sustain Mr. Lopez-Garcia's conviction. He was a passenger in a car found to have a hidden compartment containing cocaine. The car was registered and insured in his name. During the stop, Mr. Ticas acknowledged that he was traveling with Mr. Lopez-Garcia, and he was keenly attentive to what was transpiring between Mr. Lopez-Garcia and the officers. Moreover, the drugs were found in cars traveling in tandem with the exact same make and model, the exact same hidden compartment, containing nearly the exact same quantity of cocaine. Under the totality of circumstances, the evidence was sufficient to sustain Mr. Lopez-Garcia's conviction.

The judgment of the district court is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Chief Circuit Judge