FILED
United States Court of Appeals
Tenth Circuit

**March 19, 2014**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KALVEST GANADONEGRO,

Defendant - Appellant.

_____

NAVAJO NATION HUMAN RIGHTS
COMMISSION,

Amicus Curiae.

No. 13-2013
D. New Mexico
(D.C. No. 1:09-CR-00312-JB-1)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **MURPHY**, and **MATHESON**, Circuit Judges.

I.    **Introduction**

Appellant Kalvest Ganadonegro was charged in a superceding indictment

with one count of second degree murder, one count of voluntary manslaughter,

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

and one count of the assimilated crime of abandonment or abuse of a child resulting in death. The jury convicted him of voluntary manslaughter and he was sentenced to a term of 120 months' imprisonment. Ganadonegro raises two issues in this direct criminal appeal: (1) whether the district court erred in denying his *Batson* challenge, *see Batson v. Kentucky*, 476 U.S. 79 (1986), and (2) whether the prosecutor engaged in misconduct by questioning him about his use of an interpreter during the trial. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the judgment of conviction.

## II. Background

In 2008, Ganadonegro's nine-month-old niece died while in his care. Because Ganadonegro is Native American and the alleged crime occurred in Indian Country, he was charged in a federal indictment with first degree felony murder, in violation of 18 U.S.C. §§ 1153, 1111(a) and (c)(3). The underlying felony was charged as child abuse. The jury was unable to reach a verdict and the district court declared a mistrial. Ganadonegro was then charged in a superceding indictment with one count of second degree murder, in violation of 18 U.S.C. §§ 1153 and 1111(a); one count of voluntary manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112(a); and one count of the assimilated crime of abandonment or abuse of a child resulting in death, in violation of 18 U.S.C. §§ 13, 1153 and N.M. Stat. Ann. § 30-6-1(D)(1), (F).

Jury selection began on February 27, 2012. During voir dire, Ganadonegro's counsel asked the Native American members of the venire to raise their hands. The only member of the jury pool who raised her hand was later one of a group of fifteen potential jurors struck for cause.[1] The parties then exercised their peremptory challenges. The Government exercised its third peremptory challenge to strike Lawrence Long from the jury pool. Ganadonegro raised a *Batson* objection to the strike of Mr. Long. *See Batson*, 476 U.S. at 89 (holding the Equal Protection Clause prohibits the prosecution from exercising racially motivated peremptory challenges); *United States v. Joe*, 8 F.3d 1488, 1498-99 (10th Cir. 1993) (applying *Batson* to the peremptory strike of a Native American). Although Mr. Long did not self-identify as Native American, Ganadonegro argued his responses to other general questions suggested he was Native American.

In response to Ganadonegro's objection, the Government offered the following reasons for striking Mr. Long: "Well, I'll start with the fact that he did not indicate that he was Native American. But beyond that, Your Honor, he is a young, childless individual who we feel would not make a good juror on this case." Ganadonegro's counsel attempted to show the Government's explanation was a pretext for racial discrimination by comparing Mr. Long to another venire

---

[1] During voir dire, the struck juror, Ms. Begay, stated she could not be fair and impartial toward Ganadonegro. Ganadonegro's counsel requested that Ms. Begay be struck for cause, stating, "I'm afraid we have to let Begay go." The Government agreed.

member, Eric Baca, who the Government did not strike but who Ganadonegro struck before the Government had exercised all of its peremptory challenges. Counsel argued the Government had earlier opposed striking Mr. Baca for cause even though, like Mr. Long, he was young and childless. *Cf. Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step.").

The district court overruled Ganadonegro's *Batson* objection, stating:

> Well, I do think that juries bring to bear their experiences, and I think [the prosecutor] has stated a legitimate nondiscriminatory reason for exercising her peremptory challenge. It might be nice to have a Native American on the jury, but I'm not sure that he's been struck for an illegitimate reason.
>
> It seems that trying to pick people that have children or familiarity with children or those things is a legitimate way of exercising a peremptory challenge, so I'm not sure I can deny the challenge just because she's trying to maneuver or come up with a better racial composition, so I think that the Government's properly exercised its peremptory challenge, and I'll overrule the *Batson* challenge.

Mr. Long was not returned to the venire and the trial proceeded.

In his opening statement, defense counsel addressed Ganadonegro's admission to law enforcement that he had shaken his niece three times on the

afternoon she died.[2]  Counsel asserted the "case is not about whether

[Ganadonegro] shook [his niece] . . . . The question . . . is about what he meant

when he said he shook her and whether that had anything to do with her

collapse."  He explained that Ganadonegro used an interpreter intermittently

during his FBI interrogation because he did not speak "perfect" English.  He also

stated Ganadonegro would testify the word "shaking" does not translate directly

from English to Navajo so it meant something "a little bit different [to

Ganadonegro] than what it might mean to someone who's not Navajo."  During

the trial, a witness for the defense, Dr. Samuel Roll, testified about

Ganadonegro's use of language.  Dr. Roll opined that Ganadonegro might respond

appropriately during a conversation without fully understanding the conversation.

Roll attributed this, in part, to the fact English was Ganadonegro's second

language.  He opined that Ganadonegro was "not competent in understanding

language at certain levels or social interactions or written language."

Ganadonegro testified in his own defense.  He spoke through an interpreter

at least twenty-five times during his direct examination.  During cross-

examination, the prosecutor questioned him about his more extensive use of the

interpreter during the current trial than during the first trial.  Ganadonegro's

counsel objected, arguing any questioning about the use of the interpreter was a

---

[2]The Government's motion to supplement the record with the transcript of
Ganadonegro's statement to investigators is **denied**.

-5-

violation of Ganadonegro's right to a fair trial.  The district court permitted the

cross-examination to continue after ruling that Dr. Roll's direct testimony about

Ganadonegro's English competency put the matter in issue.  The prosecutor asked

Ganadonegro several additional questions about his use of the interpreter,

eliciting a concession from Ganadonegro that he had used the interpreter only

once during his first trial—when he asked for a translation of the Navajo word

"naałhéésh."[3]

Ganadonegro was convicted of voluntary manslaughter and sentenced to a

term of 120 months' imprisonment.  He filed a timely direct appeal, challenging

the rejection of his *Batson* objection and arguing the prosecution engaged in

misconduct by questioning him about his use of an interpreter during the trial.

## III.  Discussion

### A.    *Batson* Objection

The Supreme Court has established a three-step process to assist district

courts in evaluating whether the exercise of a peremptory challenge is a violation

of a defendant's equal protection rights.  "First, a defendant must make a prima

facie showing that a peremptory challenge has been exercised on the basis of

race; second, if that showing has been made, the prosecution must offer a race-

---

[3]At Ganadonegro's first trial, the word was interpreted as "sluggish and listless."  Ganadonegro testified during cross-examination at the second trial that the word was interpreted during his interview with the FBI as "lethargic" but he didn't know what lethargic meant.

neutral basis for striking the juror in question; and third, in light of the parties'
submissions, the trial court must determine whether the defendant has shown
purposeful discrimination." *Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008)
(alterations and quotations omitted). Although the burden of production shifts to
the prosecution at the second stage, the party raising the *Batson* objection carries
the ultimate burden of persuading the district court that the prosecution has
engaged in purposeful discrimination. *Hidalgo v. Fagen, Inc.*, 206 F.3d 1013,
1019 (10th Cir. 2000). The prosecution's racially neutral explanation is a legal
issue this court reviews de novo. *Id*. The trial court's ultimate finding on the
question of intentional discrimination, however, is reviewed for clear error. *Id*.

The Government disputes that Ganadonegro satisfied his first-step burden
of establishing a prima facie case, arguing this court can affirm the district court's
ruling on his *Batson* objection because he failed to show juror Long was Native
American. Relying on the Supreme Court's opinion in *Johnson v. California*, 545
U.S. 162 (2005), the Government argues a defendant cannot attempt to show an
inference of discrimination unless he first shows the potential juror is a "member
of a particular cognizable race." Appellee Brief at 18-19. *Johnson*, however,
does not so hold. It, instead, reiterated that a defendant's burden at the prima
facie stage is light and he may meet that burden by pointing to any evidence that
merely raises an *inference* of a discriminatory purpose. *Johnson*, 545 U.S. at 169.
The Government's argument, however, implicates an issue never directly

addressed by this court: *i.e.*, whether a defendant can prevail under *Batson* without proving the challenged juror belongs to a protected class.[4] Because we can affirm the district court's ruling without addressing Ganadonegro's prima facie burden, it is unnecessary to address this question.[5]

At the second step of the *Batson* analysis, "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

---

[4]It is unclear whether the Government is arguing (1) a defendant cannot even proceed to the first step of the *Batson* process without first proving the challenged juror belongs to a protected class or (2) a defendant can never raise an inference of discrimination at the prima facie stage by relying on evidence that merely suggests, rather than proves, the challenged juror was a member of a protected class. If it is the latter, we note a defendant can meet his prima facie burden when "the sum of the proffered facts gives rise to an inference of discriminatory purpose." *Johnson v. California*, 545 U.S. 162, 169 (2005) (quotation omitted). Evidence supporting a conclusion the prosecutor believed the challenged juror was a member of a protected class would appear to satisfy this burden. *Cf. Saiz v. Ortiz*, 392 F.3d 1166, 1178-79 (10th Cir. 2004) (assuming defendant met his prima facie burden as to two challenged jurors who "had Hispanic surnames"). While the prosecutor noted Mr. Long did not identify himself as Native American when asked, Ganadonegro argued Long's other responses suggested he was Native American. The district court made no findings related to this argument.

[5]It is likewise unnecessary to address the Government's additional argument that a defendant's prima facie burden does not become moot on appeal when the challenged juror "affirmatively denies membership in a protected class." Appellee Brief at 18. *But see Hernandez v. New York,* 500 U.S. 352, 359 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."); *United States v. Barrett*, 496 F.3d 1079, 1104 (10th Cir. 2007) (same).

-8-

*Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam) (quotation omitted).

Here, the prosecutor stated she challenged Mr. Long because he was young and childless and she did not believe he would make a good juror on a case involving allegations of shaken baby syndrome. Ganadonegro concedes this was a legitimate, nondiscriminatory reason for striking Mr. Long. *See United States v. Helmstetter*, 479 F.3d 750, 753-54 (10th Cir. 2007) (holding jury-selection decisions predicated on age do not violate equal protection).

Thus, we move to the third step of the *Batson* process. At this stage, the district court was required to decide whether Ganadonegro demonstrated that the prosecutor's proffered reason was a pretext for racial discrimination. *Purkett*, 514 U.S. at 767. "This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *United States v. Nelson*, 450 F.3d 1201, 1207 (10th Cir. 2006) (quotations omitted). Here, the district court invited Ganadonegro's counsel to respond to the prosecutor's facially neutral explanation for challenging Mr. Long. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 855 (10th Cir. 2000) ("A trial court should ask challenging counsel to respond to the race-neutral reasons which have been proffered."). Counsel responded by comparing juror Long to juror Baca and arguing the Government struck Mr. Long, a young and childless Native American, but retained Mr. Baca, who was also young and childless. Even

if we assume Mr. Long was Native American or the prosecution believed him to be,[6] this comparison is unavailing in this case. Mr. Baca was never seated on the jury; he was removed from the venire by Ganadonegro himself before the prosecution removed Mr. Long and before it exercised all its strikes.[7] Recognizing this flaw in the comparison, Ganadonegro argued to the district court that the prosecution's opposition to his attempt to strike Mr. Baca for cause was evidence supporting his claim of intentional discrimination. It is not.

Because there were legitimate reasons for the Government to oppose the for-cause strike of Mr. Baca, that opposition adds nothing to the *Batson* calculus. As the Government pointed out at oral argument, the record shows Mr. Baca was a college student who was majoring in criminal justice and leaning toward becoming a police officer. His father was a retired law enforcement officer. The Government clearly had an interest in keeping a juror with his characteristics in the jury pool.[8]

---

[6]Although Ganadonegro identified Long's place of residence, high school, and employment history as indicating he was Native American, he alternatively speculated that Mr. Long was Hispanic.

[7]Ganadonegro exercised his second overall peremptory challenge in the first round of strikes to remove Mr. Baca; Mr. Long was removed by the prosecution in the third round of strikes.

[8]Additionally, the Government's strategy in opposing the for-cause strike of Mr. Baca may have been to force Ganadonegro to use a peremptory challenge to remove him.

Further, the record wholly supports the district court's conclusion that Mr. Baca should not have been removed for cause. Ganadonegro argued Mr. Baca was a hardship case because he had school on Tuesday and Thursday and had a test on Thursday. The Government opposed striking Mr. Baca for cause, correctly asserting he had represented to the court that his test could be rescheduled. The district court denied Ganadonegro's request to remove Mr. Baca for cause, stating: "When I asked him about his schedule, . . . he didn't seem to have a problem. He seemed to actually be interested in serving, so I'm going to overrule the objection to Mr. Baca and leave him on. He didn't seem to be indicating he couldn't serve." The district court's rendition of the record and its decision to keep Mr. Baca in the venire are completely correct. Thus, the Government's opposition to striking Mr. Baca for cause does not show the prosecution's peremptory strike of Mr. Long was racially motivated. *See Johnson v. Gibson*, 169 F.3d 1239, 1248 (10th Cir. 1999) (holding that state trial courts have no independent duty to "pore over the record and compare the characteristics of jurors, searching for evidence of pretext, absent any pretext argument or evidence presented by counsel").

On appeal, Ganadonegro does not directly address his failure to create a record from which a finding of discrimination could be made. Instead, he asserts the district court committed a legal error by failing to properly apply *Batson*'s three-part test. This argument lacks merit.

-11-

Before denying the challenge, the district court stated, "It seems that trying to pick people that have children or familiarity with children or those things is a legitimate way of exercising a peremptory challenge, so I'm not sure I can deny the challenge just because [the prosecutor is] trying to maneuver or come up with a better racial composition . . . ." Ganadonegro argues this statement constitutes a finding that the prosecutor engaged in racial discrimination when she exercised the peremptory challenge and exposes the court's erroneous legal conclusion that it could not sustain his *Batson* challenge even in light of that fact.

Admittedly, the district court's statement is ambiguous. Read in context, however, we conclude the court was restating Ganadonegro's objection rather than finding the prosecutor engaged in purposeful discrimination. The court was correctly stating it could not grant relief simply because Ganadonegro *asserted* the prosecutor exercised the peremptory strike to affect the racial composition of the jury. Understood this way, the district court's basis for overruling the Batson challenge was a credibility determination. The district court believed the Government when it stated that Mr. Long was excluded because of his youth and childlessness. When the district court makes such a determination, we must defer to its conclusion.[9] *See Hernandez v. New York,* 500 U.S. 352, 365 (1991).

_____

[9]We nonetheless remind district courts that they play "a pivotal role in evaluating *Batson* claims." *Snyder,* 552 U.S. at 477. Their task at the third stage of a *Batson* ruling is to "evaluat[e] the persuasiveness of the justification proffered by the prosecut[ion]." *United States v. Nelson*, 450 F.3d 1201, 1207

(continued...)

-12-

This interpretation of the court's statement is consistent with the record because, as we have previously concluded, it does not support a finding the strike of Mr. Long was racially motivated. The interpretation is also supported by the subsequent actions of the parties. Ganadonegro did not make a contemporaneous objection to the district court's application of *Batson* or ask the district court to return Mr. Long to the venire. *See Batson*, 476 U.S. at 99 n.24 (stating remedies for a *Batson* error are "to discharge the venire and select a new jury from a panel not previously associated with the case, or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire" (citation omitted)). This inaction indicates he, too, did not believe the court made a finding of discriminatory intent. Instead, Mr. Long was removed and the parties proceeded with their peremptory challenges.

We do not accept Ganadonegro's interpretation of the district court's statement for an additional reason. It would require us to conclude the court was wholly unaware of binding Supreme Court precedent, first articulated more than

---

[9](...continued)
(10th Cir. 2006) (quotation omitted). A clear and thorough ruling is of crucial importance because trial courts are usually in the best position to evaluate the sincerity of the prosecution's proffered reason for a peremptory strike. *See Hernandez*, 500 U.S. at 365 ("In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. . . . [T]he best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." (quotations omitted)).

-13-

twenty-seven years ago when the *Batson* Court clearly and unequivocally held that the use of peremptory strikes to purposefully affect the racial composition of a jury violates the Equal Protection Clause. "We traditionally presume, absent some indication in the record suggesting otherwise, that trial judges are presumed to know the law and apply it in making their decisions." *United States v. Ruiz-Terrazas,* 477 F.3d 1196, 1201 (10th Cir. 2007) (quotations and alteration omitted). Here, in conformity with *Batson,* the court permitted Ganadonegro to set out his prima facie case. It then invited the prosecutor to articulate her nondiscriminatory reason for striking Mr. Long. At the next step, the court prompted Ganadonegro's counsel to address the prosecutor's explanation and then ruled on the merits of the challenge. The district court was clearly aware of *Batson* and its three-step process. Accordingly, the record does not clearly indicate the district court misapplied the law. *See id*.

In light of the record as a whole, there is only one logical reading of the court's statement: it constitutes a ruling that Ganadonegro's *Batson* challenge should be rejected because he failed to carry his burden of showing purposeful discrimination. *See Saiz v. Ortiz*, 392 F.3d 1166, 1171 (10th Cir. 2004) ("The party objecting to the use of peremptory strikes . . . carries the ultimate burden of persuasion." (quotation omitted)). So read, there was no legal or factual error committed by the court.

**B.     Prosecutorial Misconduct**

-14-

Ganadonegro also argues the Government committed prosecutorial misconduct when it cross-examined him about his use of an interpreter during the trial. Properly preserved allegations of prosecutorial misconduct are reviewed de novo.[10] *United States v. Anaya*, 727 F.3d 1043, 1052 (10th Cir. 2013). Here, Ganadonegro objected to his cross-examination multiple times. He first asserted the questioning was argumentative. This objection was overruled. He next argued "he should not be penalized because [he was] using the interpreter." That objection was also overruled. Finally, he objected on the grounds the questioning misstated the record, was not relevant, was more prejudicial than probative, penalized him for his use of the interpreter, and violated his rights to due process and a fair trial. The district court overruled the multiple objections, concluding Ganadonegro's witness, Dr. Roll, put his use of English in issue with his testimony.

Because the district court overruled the objections, "we [must] first decide whether the conduct was improper." *Id*. Ganadonegro concedes the Government was entitled "to question the effect of his language skills on his comprehension of agents' questions at the time of his statement." Appellant Brief at 32. His appellate argument centers on his allegation the prosecutor's "badgering about

---

[10]The Government argues Ganadonegro's claim should be reviewed only for plain error because he never specifically objected to his cross-examination based on prosecutorial misconduct. Because Ganadonegro's claim fails even under the de novo standard, we do not address the Government's plain error argument.

utilization of an interpreter's assistance at trial crossed the line, unjustly demeaned him, and allowed the government to appeal to jurors' deeply rooted ethnic prejudice." *Id*. at 43. After reviewing the record, this court has no hesitation concluding the prosecutor's conduct was not improper. Ganadonegro's defense relied heavily on his language proficiency.[11] The Government, therefore, was entitled to pursue this theory of defense. Further, Ganadonegro has failed to identify particular questions in his cross-examination that would violate his fair trial rights, instead objecting only to the length of that line of questioning. Contrary to Ganadonegro's assertions that the Government's cross-examination was "relentless" and amounted to "badgering," we conclude the questioning was appropriate in scope and tone given that the defense invited questions about Ganadonegro's linguistic abilities.

## IV. Conclusion

The judgment of conviction is **affirmed**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

---

[11]Dr. Roll testified about Ganadonegro's use of the English language at length, the defense mentioned Ganadonegro's language abilities in its opening argument, Ganadonegro himself testified about his use of an interpreter, and the defense cross-examined FBI Special Agent Bourgeois about Ganadonegro's use of an interpreter during his initial statement to the FBI.