**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

PUBLISH

**March 13, 2007**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

GEORGE CLINTON
HELMSTETTER,

        Defendant - Appellant.

No. 06-1045

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 05-CR-00163 LTB)**

David A. Lane, Killmer, Lane & Newman, LLP, Denver, Colorado, for Defendant
- Appellant.

Andrew A. Vogt, Assistant United States Attorney (Troy A. Eid, United States
Attorney, with him on the brief), Denver, Colorado, for Plaintiff - Appellee.

Before **MURPHY**, **McWILLIAMS**, and **HARTZ**, Circuit Judges.

**HARTZ**, Circuit Judge.

George Helmstetter was convicted in the United States District Court for

the District of Colorado on six counts of passing, uttering, and possessing

counterfeit notes with intent to defraud. *See* 18 U.S.C. § 472. On appeal he

challenges the peremptory challenge of a potential juror on the basis of youth and claims that his Fifth and Sixth Amendment rights were violated when the district court precluded testimony about his codefendant's drug use. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.  BACKGROUND

On April 6, 2005, a federal grand jury indicted Mr. Helmstetter, Phyllis Richmond, and Andrew Seeman on nine counts of passing, uttering, and possessing counterfeit notes with intent to defraud. Mr. Seeman reached a plea agreement with the government, and Mr. Helmstetter and Ms. Richmond were tried together. Six of the counts named Mr. Helmstetter. Of those, five charged him with passing counterfeit notes, and one charged him with possession of two counterfeit notes. On one of the passing counts Ms. Richmond was also charged. In addition, she was charged in a second, separate passing count.

Ms. Richmond apparently had used heroin. She filed a pretrial motion in limine to prevent the government from introducing evidence of her drug use. Although the motion did not attempt to bar Mr. Helmstetter from presenting any evidence, at the hearing on the motion his counsel alerted the court to his client's interest in this information. He stated that "if the trials [of Ms. Richmond and Mr. Helmstetter] are not severed," as he and Ms. Richmond had requested in earlier unresolved motions, "there may be a chance that Mr. Helmstetter as part of his defense may want to get into [Ms. Richmond's drug use] over

Ms. Richmond's objections." R. Vol. II at 5. "I'm just saying that as further fuel for the severance fire," he added. *Id.* The district court conditionally granted the motion in limine, noting that its decision was not "a definitive ruling" on the issue. *Id.* The next day the court denied the severance motions by Mr. Helmstetter and Ms. Richmond.[1]

As trial was about to begin, Mr. Helmstetter's counsel warned the court that he may mention in his opening statement that Ms. Richmond was a drug user. He said that "[i]t's going to be part of the evidence to explain why various funds were in the possession of Mr. Helmstetter." R. Vol. III at 9. Observing that counsel's comments "sound[ed] like a whipsaw strategy" to support the previously denied severance, the court stated that it "ha[d] granted conditionally [Ms. Richmond's] motion *in limine*, and the jury is instructed that counsel's opening statements are not evidence. It's hard for me to see how this is relevant, but we'll have to take that in the context of the trial." *Id.* at 9–10.

During jury selection the government used peremptory challenges to strike two potential jurors with Hispanic surnames. Mr. Helmstetter's counsel objected under *Batson v. Kentucky*, 476 U.S. 79 (1986), which prohibits the use of

---

[1]Mr. Helmstetter perfunctorily asserts in his opening brief that the district court should have severed his trial from Ms. Richmond's. But the brief does not list this as an issue for appeal and does not present any argument supporting the assertion. We therefore need not address the issue. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (internal quotation marks omitted)).

peremptory challenges on the basis of race. The government offered race-neutral explanations for each strike. *See id.* at 97–98. The first potential juror was an attorney litigating a case against a law-enforcement entity. As to the second, the government stated:

> [S]he is 20 years old. She is a high school graduate. She has a pierced lip. And it would not make a difference what race she is. If she is in fact of Hispanic origin I would exercise that challenge because of her youth and because of the mix with other jurors.

R. Vol. III at 64. Mr. Helmstetter's counsel responded that this justification was "age discrimination, if nothing else. . . . She's old enough to serve as a juror. . . . She's a qualified juror." *Id.* at 65. The court denied the *Batson* challenge.

In his opening statement Mr. Helmstetter's counsel acknowledged that his client had passed counterfeit bills but said that he had not known that they were counterfeit. He also acknowledged that Mr. Helmstetter had given counterfeit bills to Ms. Richmond. This had occurred because he had been living with Ms. Richmond, who had a "drug problem," and he had taken control of her spending to prevent her from buying drugs. *Id.* at 122. As a result, "[i]f she passed [any counterfeit bills], it was money that [he] gave her for shopping." *Id.*

After the prosecution rested its case and the district court denied the defendants' motions for acquittal, Ms. Richmond testified on her own behalf. Mr. Helmstetter's counsel did not attempt to cross-examine her about her drug

use, although he did ask whether Mr. Helmstetter was "doling out money to you in an effort to control your expenditures." R. Vol. V at 555. She answered yes.

Mr. Helmstetter was the next witness. On direct examination he stated that when he moved in with Ms. Richmond shortly before the counterfeit bills were passed, she "didn't exactly look like she used to. I had always been amazed at her appearance. She always cut quite a swath everywhere she goes." *Id.* at 585. When Ms. Richmond's counsel objected to this line of questioning, Mr. Helmstetter's counsel explained in a bench conference that he "want[ed] to get into [Ms. Richmond's alleged drug addiction] as the reason why George Helmstetter had all the money that she had and he would dole out money to her." *Id.* at 586. The district court responded that he could "get into [Mr. Helmstetter's motivations] without discussing heroin" by examining him "in a generic fashion in terms of concerns about [Ms. Richmond's] ability to manage her financial affairs." *Id.* Mr. Helmstetter's counsel objected to the ruling, and the court explained that testimony on Ms. Richmond's drug use was not relevant to the charges at issue and would be prejudicial to Ms. Richmond.

Mr. Helmstetter was found guilty on all six counts. Ms. Richmond was acquitted on the two counts on which she was charged. On January 26, 2006, Mr. Helmstetter was sentenced to six concurrent 24-month terms of imprisonment.

II.     **DISCUSSION**

Mr. Helmstetter raises three issues on appeal. He claims that (1) a peremptory challenge on the basis of youth denied equal protection and violated the separation-of-powers doctrine; (2) his Sixth Amendment rights were violated when the district court precluded him from cross-examining Ms. Richmond regarding her drug use; and (3) his Fifth Amendment right to due process was violated when the court precluded him from testifying about Ms. Richmond's drug use.

## A. Peremptory Challenge

### 1. Equal Protection

For his equal-protection claim Mr. Helmstetter contends that "while discrimination against jurors on the basis of their youth does not carry with it the historical connotations of racial discrimination, the principle that individuals should be treated as individuals and not be discriminated against on the basis of an immutable characteristic . . . is . . . another form of stereotyping." Aplt. Br. at 16. He notes that Congress has pronounced anyone over 18 years of age qualified to serve as a juror, *see* 28 U.S.C. § 1865, and that "to strike a member of this legislatively recognized group . . . is to violate [equal protection]." Aplt. Br. at 12. He admits, however, that "no court which has considered extending *Batson* to cover age discrimination in jury selection has done so." *Id.* at 17.

This court is among those that have declined to extend *Batson* to age-based peremptory strikes. In *Hidalgo v. Fagen, Inc.*, 206 F.3d 1013 (10th Cir. 2000),

the defendant exercised a peremptory challenge against a woman who appeared to be Hispanic.  When the plaintiff objected, defendant's counsel explained that he "prefer[s] older people, rather than younger people" for juries.  *Id.* at 1018.  We held that this explanation was permissible because it was race-neutral, stating, "A fair reading of the explanation for the strike is that Fagen's counsel struck Ms. Gonzales because of her youth.  We have held this to be an acceptable race-neutral justification for exercising a peremptory strike."  *Id.* at 1019 (citing *United States v. Joe*, 8 F.3d 1488, 1499 (10th Cir. 1993) (affirming denial of *Batson* challenge when prosecutor offered three race-neutral reasons, one of which was the youth of the juror)).

Even if not strictly bound by this precedent, we see no reason to reexamine it in light of the fact that every other circuit to address the issue has rejected the argument that jury-selection procedures discriminating on the basis of age violate equal protection.  *See United States v. Cresta*, 825 F.2d 538, 544–45 (1st Cir. 1987) (prosecutor's challenge of potential jurors aged 18 to 34 does not violate equal protection); *United States v. Bryce*, 208 F.3d 346, 350 n.3 (2d Cir. 2000) (peremptory strike based on youth of juror permissible race-neutral justification); *Pemberthy v. Beyer*, 19 F.3d 857, 870 n.18 (3d Cir. 1994) (Alito, J.) (age-based peremptory challenges are subject to rational-basis scrutiny and are likely to be held rationally related to the legitimate objectives of jury impartiality and the appearance of impartiality); *Howard v. Moore*, 131 F.3d 399, 408 (4th Cir. 1997)

-7-

(en banc) (age is acceptable race-neutral factor under *Batson*); *United States v. Jimenez*, 77 F.3d 95, 100 (5th Cir. 1996) (same); *United States v. Maxwell*, 160 F.3d 1071, 1075–76 (6th Cir. 1998) (*Batson* inapplicable to peremptory challenges of young adults); *United States v. Jackson*, 983 F.2d 757, 762 (7th Cir. 1993) ("[N]o court has found a Fourteenth Amendment equal protection violation based upon the exclusion of a certain age group from the jury."); *Weber v. Strippit, Inc.*, 186 F.3d 907, 911 (8th Cir. 1999) (declining to extend *Batson* to peremptory challenges removing jurors over 50); *United States v. Pichay*, 986 F.2d 1259, 1260 (9th Cir. 1993) ("[Y]oung adults do not constitute a cognizable group for purposes of an equal protection challenge to the composition of a petit jury."); *United States v. Williams*, No. 06-13793, 2007 WL 140997, at *1 (11th Cir. Jan. 22, 2007) (unpublished decision) (peremptory strike on basis of youth permissible); *see also United States v. White*, 899 F.2d 52, *1 (D.C. Cir. 1990) (per curiam) (unpublished table decision) (young, black males not a cognizable racial group under *Batson*); *cf. Rice v. Collins*, 126 S. Ct. 969, 975 (2006) (on habeas review, holding that state trial court could credit prosecutor's proffered justification of peremptory challenge as being on the basis of youth and in dictum noting that "[i]t is not unreasonable to believe the prosecutor remained worried that a young person with few ties to the community might be less willing than an older, more permanent resident to impose a lengthy sentence for possessing a

small amount of a controlled substance"). We reject Mr. Helmstetter's equal-protection challenge.

## 2. Separation of Powers

Mr. Helmstetter also argues that peremptory strikes on the basis of age violate the separation-of-powers doctrine. He points to 28 U.S.C. § 1865, which provides, in part, that United States citizens over 18 are qualified to be jurors. He reasons that

> [i]n striking [a] juror because of her youth, the prosecutor . . . made a policy pronouncement that, in his opinion, Congress was simply wrong in qualifying this twenty-year old juror for service. In sustaining that reason, the [district court] in conjunction with the prosecutor, made the work of Congress a nullity.

Aplt. Br. at 18.

Mr. Helmstetter never raised this separation-of-powers argument below. Indeed, at oral argument he acknowledged that he "didn't say the words *separation of powers*" when he objected to the peremptory challenge. He contends, however, that his statement to the district court that the prospective juror was "a qualified juror," R. Vol. III at 65, should suffice for preservation. We disagree. Pointing out that a prospective juror may be statutorily qualified hardly indicates that a strike of that juror may violate the separation-of-powers doctrine. We conclude that Mr. Helmstetter's separation-of-powers argument was raised for the first time in this court. "[W]e find no reason to deviate from the

-9-

general rule that we do not address arguments presented for the first time on appeal." *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002).

### B.    Sixth Amendment Violation

"Whether rooted directly in the Due Process Clause of the [Fifth] Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 126 S. Ct. 1727, 1731 (2006) (internal quotation marks omitted). Included in a defendant's Sixth Amendment right to confront witnesses against him is the right to cross-examine those witnesses called by other parties. *See Nelson v. O'Neil*, 402 U.S. 622, 626–27 (1971). Mr. Helmstetter asserts that his Sixth Amendment rights were violated when he was precluded from cross-examining his codefendant regarding her drug use. He contends that this matter was central to his defense that he did not know that the bills were counterfeit. According to Mr. Helmstetter, "Painting [him] in a sinister light by virtue of his unusual control over the flow of Richmond's money, made it appear that [he] wanted Richmond to pass counterfeit, when the reality was that he simply wanted her off heroin." Aplt. Br. at 26.

But Mr. Helmstetter never attempted to cross-examine Ms. Richmond on the matter. And, contrary to Mr. Helmstetter's contention, the district court never precluded him from such cross-examination. Although on at least two occasions

before trial he did state his interest in submitting evidence on Ms. Richmond's drug use, he never sought a ruling from the court on this issue, and the court never made one. That the court may have conditionally granted a motion in limine preventing the *government* from submitting evidence about Ms. Richmond's drug use could not be construed as a limitation on *Mr. Helmstetter's* ability to seek admission of the same evidence. The admissibility of evidence depends on the purpose for which it is offered, and Mr. Helmstetter's purpose could have been far different from the government's. In any event, the court's comment before opening statements that "we'll have to take [the issue of the relevance of Ms. Richmond's drug use] in the context of the trial," R. Vol. III at 10, clearly indicates that Mr. Helmstetter had not already been barred from presenting testimony on this subject. Because the court did not restrict Mr. Helmstetter's cross-examination of Ms. Richmond, his Sixth Amendment rights were not violated.

### C.    Fifth Amendment Violation

Mr. Helmstetter asserts that his Fifth Amendment right to due process was violated when the district court prevented him from testifying about Ms. Richmond's alleged drug use. In limiting Mr. Helmstetter's testimony on this issue, the district court said that he could explain his motivations for controlling Ms. Richmond's finances "in a generic fashion in terms of concern about her ability to manage her financial affairs." R. Vol. V at 586. This limitation, the

-11-

court explained, was appropriate because testimony on Ms. Richmond's drug use was not relevant and would be prejudicial to Ms. Richmond. On appeal Mr. Helmstetter asserts that preclusion of testimony on Ms. Richmond's drug use prevented him from explaining why he was controlling her money and from impeaching her credibility as a witness.

As the Supreme Court recently stated:

> While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes*, 126 S. Ct. at 1732. In particular, "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Id.* (ellipsis, brackets, and internal quotation marks omitted).

Mr. Helmstetter's right to due process was not violated. To begin with, any prejudice caused by the exclusion of his testimony on Ms. Richmond's alleged drug use is largely of Mr. Helmstetter's own making: The first mention of his control of her finances was in his own opening statement, and it was his cross-examination of Ms. Richmond that elicited the first testimony on his control of her finances. On direct examination Ms. Richmond had testified only that he had given her money for his share of the rent and to contribute towards other

-12-

expenses, not that he was controlling her spending. Moreover, we see little relevance in Mr. Helmstetter's explanation of why he controlled Ms. Richmond's finances, and evidence of her drug use could be quite prejudicial to her. We cannot countenance a party's unnecessary creation of its own exigency (here, the alleged prejudice arising from testimony concerning control of finances) to justify the admission of evidence that would otherwise be clearly improper.

As to Mr. Helmstetter's contention that the district court's ruling prevented him from impeaching Ms. Richmond's credibility, the contention was not preserved below. His objection in district court made no mention of impeachment. An appellant cannot challenge the exclusion of evidence at trial by offering a ground for admission not raised below. *See United States v. Barbee*, 968 F.2d 1026, 1031 (10th Cir. 1992); *see* 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 103.12[3] (Joseph M. McLaughlin ed., 2d ed. 2006) ("The right to claim error on appeal is not preserved by a correctly overruled specific objection in the trial court if the objection is based on a different ground than the argument on appeal.").

Mr Helmstetter's right to due process was not violated.

III. **CONCLUSION**

We AFFIRM the judgment of the district court.