# United States Court of Appeals
## For the First Circuit

No. 15-1197

DAGOBERTO SANCHEZ,

Petitioner, Appellant,

v.

GARY RODEN,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Ruth Greenberg, for appellant.
Thomas E. Bocian, Assistant Attorney General, Criminal
Bureau, with whom Maura Healey, Attorney General of Massachusetts,
was on brief, for appellee.

December 7, 2015

**LYNCH**, **Circuit Judge**. This habeas corpus petition comes to us again following our previous opinion remanding to the federal district court. Sanchez v. Roden (Sanchez I), 753 F.3d 279, 309 (1st Cir. 2014). The petition contests the state court's conclusion that the state prosecutor did not violate the Fourteenth Amendment in his exercise of a peremptory challenge during jury selection for Dagoberto Sanchez's state trial on charges of second-degree murder and unlawful possession of a firearm. Sanchez contends that the challenge was impermissibly based on race.

Previously, this court found that, contrary to the state court's ruling, Sanchez had established a prima facie case of racial discrimination under step one of the framework established in Batson v. Kentucky, 476 U.S. 79 (1986). We remanded the case to the federal district court for an evidentiary hearing as to steps two and three of Batson. After that hearing, which included testimony from the prosecutor who exercised the challenge, the district court ruled against Sanchez on the final step of Batson and denied his petition. Sanchez v. Roden, No. 12-10931, 2015 WL 461917 (D. Mass. Feb. 4, 2015). We affirm.

I.

We recite only the facts necessary to these habeas proceedings, as our previous opinion in this case describes Sanchez's conviction and direct appeal in detail. In 2005, Sanchez was indicted for second-degree murder and unlawful possession of

a firearm. During jury selection for his trial, state prosecutor Mark Lee exercised peremptory challenges, as relevant here, to strike three black men age 25 or under (Jurors 201, 227, and 261).[1] After striking Jurors 201 and 227 but before striking Juror 261, a 19-year-old black male college student, Prosecutor Lee seated Juror 243, a 21-year-old white male college student born in Russia. When Lee moved to strike Juror 261, Sanchez's defense counsel objected, arguing that Lee was striking young black potential jurors on the basis of a combination of their race, youth, and gender. The judge ruled that Sanchez had not made a prima facie case of discrimination. Ultimately, the impaneled jury of sixteen included three black women and two black men. The jury convicted Sanchez, and he was sentenced to life imprisonment for murder, with a concurrent two-year sentence on the firearm charge.

On appeal to the Massachusetts Appeals Court, Sanchez contended, among other things, that Lee had improperly exercised peremptory challenges against young "men of color," but the state appeals court rejected that contention, Commonwealth v. Sanchez, 944 N.E.2d 625, 628-29 (Mass. App. Ct. 2011), and the Massachusetts Supreme Judicial Court denied further review, Commonwealth v. Sanchez, 950 N.E.2d 438 (Mass. 2011) (table decision). Sanchez

---

[1]    The record does not clearly establish Juror 201's race, but given indications in the state court proceedings that he was a "person of color," we count him among the black jurors for the purposes of our Batson analysis.

- 3 -

subsequently petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. The district court, determining the state court's application of federal law was reasonable, denied the petition. Sanchez v. Roden, No. 12-10931, 2013 WL 593960, at *6 (D. Mass. Feb. 14, 2013) (applying the Batson framework).

This court disagreed with the Massachusetts Appeals Court and with the district court's finding. Sanchez I, 753 F.3d at 309. This court held that the state appeals court's Batson analysis had unreasonably focused on the overall racial composition of the impaneled jury, ignoring evidence of possible discrimination against the subset of young black men. Id. at 299-300. Reviewing the record de novo, the panel found that a prima facie case of racial discrimination in the prosecution's peremptory challenge against Juror 261 had been established under Batson. Noting that Lee had not yet provided a reason for the challenge, id. at 307, the panel remanded the case to the federal district court to complete the Batson inquiry, id. at 308 (instructing the district court to follow the guidance set forth in People v. Johnson, 136 P.3d 804, 808 (Cal. 2006)).

On remand, the district court held an evidentiary hearing on September 8, 2014, in which Lee alone testified and was subject to cross-examination by petitioner's counsel. Lee testified that he challenged Juror 261 -- the 19-year-old black male -- and several other jurors, including Jurors 201, 227, and

- 4 -

229, a white male college student, because of their youth.  He stated that his general practice is to challenge young jurors, such that when he reviews jury questionnaires at the beginning of jury selection, "one of the very first things" he looks at is the age of prospective jurors, which he circles in red.

Lee testified that the dynamics of jury selection also played a "significant role" in exercising challenges.  He stated, "I'm always monitoring how many peremptory challenges I have left versus how many peremptory challenges defense counsel has left and also in consideration of what I understand to be upcoming based upon the questionnaires."  He explained, "the more challenges the defense has, the more flexible they can be about exercising those challenges, and, therefore, I have to be careful about the number of challenges that I'm exercising under those circumstances."  Lee testified that during individual questioning of the prospective jurors, he flipped through the jury questionnaires and a chart that he kept to track which jurors had been struck by which party.  On cross-examination, he maintained that he does this "in every trial all the time" and is "constantly looking through the questionnaires."  He stated specifically that his low number of remaining challenges and "the number of jurors that still needed to be selected" in combination also motivated his choices regarding striking Juror 261 and keeping Juror 243.

When asked to explain why he did not challenge Juror 243 -- the 21-year-old white male college student from Russia -- Lee testified that he was "running out of challenges." He explained that when he has few challenges remaining, he reviews the jury "questionnaires to determine how many of the remaining challenges [he is] likely to have to use," and he then accepts young jurors based on indications that "might make them not fit their chronological age." In the case of Juror 243, Lee stated, "I took him, despite not wanting to take him," as "he was born in Moscow . . . [and] he came here on his own to begin his own education, and so I thought if I had to take a young juror, that would be somebody who might be a better candidate than most." On cross-examination, Lee conceded that there was no way to know whether Juror 243 had grown up abroad, but he reiterated that he was looking for "somebody who has some level of maturity and life experiences," and he thought Juror 243 seemed "a little bit older than someone else in terms of life experience."

During cross-examination, Lee stated that the only "outward" difference between Juror 243 and Juror 261 was that one was white and the other black. The district judge then asked, "Well, one was 19 and one was 21, right, do I have that right?" Both Sanchez's counsel and Lee responded affirmatively. The following colloquy between Sanchez's counsel and Lee ensued:

Lee: Yes, [Juror 243] was two years older.

> Sanchez's Counsel: But you challenged people who were older than 21 for age, did you not?
>
> Lee: Yes. There is a distinction, but, as I said, my inclination would have been to strike [Juror 243] under all things being equal.
>
> Sanchez's Counsel: So the two years was not the defining difference for you?
>
> Lee: At that stage of the game, every possible distinction was relevant.

Subsequent questioning turned to the importance of trial dynamics to Lee's choices.

In a February 4, 2015, order, the district court denied Sanchez's habeas petition. In reaching its decision, the district court considered Lee's testimony, oral argument by both parties, the Commonwealth's Supplemental Answer to the 2012 habeas petition, which included jury questionnaires, as well as the parties' opposing memoranda of law. The court specifically found Lee's demeanor "professional and credible throughout." At Batson step two, the court concluded that Lee's testimony that he struck Juror 261 because of his age was facially valid and race-neutral. At Batson step three, the court focused on Lee's testimony at the evidentiary hearing. Recognizing the practice of striking potential jurors because of their youth as an accepted trial strategy, the court credited Lee's explanation of his decision to strike Juror 261 based on his age. As to the alleged inconsistency in Lee's application of that practice, the court credited two

additional points: first, that Lee drew distinctions between young people that led him to keep some jurors but strike others; and second, that considerations of remaining challenges for either party, the number of jury seats to fill, and the pool of potential jurors motivated Lee to depart from his practice regarding age. After an extensive review of the evidence, the district court concluded that Sanchez had not proven Lee exercised a peremptory challenge to Juror 261 on the basis of race. This appeal followed.

## II.

Batson v. Kentucky, 476 U.S. 79 (1986), sets forth the three-step framework courts use to assess claims of racial discrimination in jury selection. When raising an objection to a prosecutor's use of a peremptory challenge, a criminal defendant must first make a prima facie case of racial discrimination. Snyder v. Louisiana, 552 U.S. 472, 476 (2008). If such a showing is made, then "the prosecution must offer a race-neutral basis for striking the juror in question." Id. at 477 (quoting Miller-El v. Dretke, 545 U.S. 231, 277 (2005) (Thomas, J., dissenting)). Finally, based on "all of the circumstances," the court must determine whether the defendant has carried his ultimate burden of showing purposeful racial discrimination. Id. at 478.

Since this court previously determined that Sanchez had made a prima facie case, this appeal concerns only the latter two

steps of the Batson inquiry as applied to Juror 261.[2]  Typically, we may not on habeas review order an evidentiary hearing under 28 U.S.C. § 2254(e)(2), barring statutorily enumerated exceptions not applicable here.  See Cullen v. Pinholster, 131 S. Ct. 1388, 1398–1400 (2011).  However, we note, as we did in our previous decision, that our remand to the federal district court for an evidentiary hearing on an issue of federal law about which "the state courts have already had their say" was permissible in light of the fact that the paucity of the record was owing to the state court's unreasonable application of Batson's first step.  Sanchez I, 753 F.3d at 308; see Madison v. Comm'r, Ala. Dep't of Corrections, 761 F.3d 1240, 1249–50 (11th Cir. 2014); Paulino v. Harrison, 542 F.3d 692, 698 & n.5 (9th Cir. 2008); cf. Smith v. Cain, 708 F.3d 628, 635 (5th Cir. 2013) (finding Batson evidentiary hearing ordered by district court to satisfy § 2254(e)(2) where criminal defendant raised Batson objection "but the state court failed to provide him the opportunity to develop the factual basis of his claim through its misapplication of the Batson standard").  Neither party has objected to this procedure.

---

[2]    We previously held that Sanchez waived any objection to the prosecution's challenges to other jurors by failing to raise them at trial, Sanchez I, 753 F.3d at 295 & n.10, and Sanchez cannot revive such challenges in this appeal.  We note, however, that challenges to other jurors nonetheless may be relevant to the issue of discriminatory intent, Dretke, 545 U.S. at 241, and so we consider such evidence for that purpose.

We review the district court's decision to deny a petition for habeas corpus de novo, Sanchez I, 753 F.3d at 293, and in the Batson context, we apply clear error review to the fact-finding court's ruling on discriminatory intent, Snyder, 552 U.S. at 477; United States v. Monell, 801 F.3d 34, 43 (1st Cir. 2015). Where the federal district court conducted an evidentiary hearing and took testimony from the prosecutor who exercised the challenge at issue, we recognize that "determinations of credibility and demeanor lie 'peculiarly within [its] province.'" Snyder, 552 U.S. at 477 (quoting Hernandez v. New York, 500 U.S. 322, 365 (1991)). We must uphold the district court's ruling unless "we are left with the definite and firm conviction that a mistake has been committed." United States v. Mensah, 737 F.3d 789, 796-97 (1st Cir. 2013) (quoting United States v. Gonzalez-Melendez, 594 F.3d 28, 35 (1st Cir. 2010)); see also Madison, 761 F.3d at 1245; Paulino, 542 F.3d at 698.

A.    Batson Step Two

When called upon to provide a race-neutral basis for his actions, Lee explained that he challenged Juror 261 because of his "age." Age is not a protected category under Batson. See United States v. Cresta, 825 F.2d 538, 545 (1st Cir. 1987); see also

- 10 -

United States v. Helmstetter, 479 F.3d 750, 754 (10th Cir. 2007) (collecting agreeing sister circuits).[3]

Bearing in mind that at step two, the prosecution's reason does not have to be "persuasive, or even plausible," Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam), we easily affirm the district court's finding that Lee's explanation -- that he struck Juror 261 because of his age -- is race-neutral, United States v. Bowles, 751 F.3d 35, 38 (1st Cir. 2014), and satisfies the state's burden at step two to articulate a nondiscriminatory reason for the strike, Purkett, 514 U.S. at 769.

B.   Batson Step Three

The critical issue at this step "is the persuasiveness of the prosecutor's justification for his peremptory strike." Miller-El v. Cockrell, 537 U.S. 322, 338–39 (2003).  The burden of proof lies with Sanchez to show that Lee acted with discriminatory purpose.  Purkett, 514 U.S. at 768.  Since this step turns on credibility determinations and a fact-driven evaluation of all the

---

[3]   Disputing Lee's explanation, Sanchez contends that our opinion in Sanchez I conclusively determined that "age" did not motivate Lee in striking Juror 261.  See Sanchez I, 753 F.3d at 306.  That contention is meritless, and it misses the point and purpose of the remand.  Whatever conclusions we drew about Lee's motivations in our prior opinion reflected only the limited facts then available on the state court record, id. at 307.  Our prior analysis pertained only to Batson step one and does not determine our current review of the latter Batson steps, based on the district court's findings, which are based on a different and augmented record.

- 11 -

relevant circumstances that the district court is best suited to make, Cockrell, 537 U.S. at 339, we review the court's ruling through "a highly deferential glass," United States v. Lara, 181 F.3d 183, 194 (1st Cir. 1999). We affirm the district court's finding that Sanchez has not established that Lee's challenge to Juror 261 was race-based.

Sanchez argues, as he did before the district court, that Lee was not motivated to challenge Juror 261 because of his youth, since were youth a criterion, he would have struck a similarly situated juror, Juror 243 (the 21-year-old white male born in Russia).[4] Courts may consider "whether similarly situated jurors from outside the allegedly targeted group were permitted to serve." United States v. Aranjo, 603 F.3d 112, 115 (1st Cir. 2010) (quoting Aspen v. Bissonnette, 480 F.3d 571, 577 (1st Cir. 2007)); see also Dretke, 545 U.S. at 241. Lee testified that although he was inclined to challenge Juror 243, he decided instead not to because he was "running out of challenges," and Juror 243 appeared more mature than his "chronological age." Lee testified:

> I took [Juror 243], despite not wanting to
> take him, but I was -- there are a number of
> young jurors who I will take based upon what
> I consider to be indications on their

---

[4] As to other young jurors, the record amply supports the district court's determination that Lee declined to strike Juror 255 because she was, at age 27, not "overly young," and declined to strike Juror 293, a 26-year-old female, and Juror 333, a 23-year-old female, because he had only three and two challenges remaining, respectively.

questionnaire that might make them not fit their chronological age, which is to say that he was 21 years old, but I noted he was born in Moscow, I noted that he came here on his own to begin his own education, and so I thought if I had to take a young juror, that would be somebody who might be a better candidate than most.

Regarding Juror 261, in contrast, Lee testified that he "didn't see anything else on [Juror 261's] questionnaire that would give [him] reason to believe that he had a maturity level greater than that of an age 19-year-old person."

Sanchez attempts to undercut the district court's finding as to this explanation's credibility. First, he points to Lee's concession on cross-examination that he was aware jury members must be U.S. citizens as proof that Lee did not believe Juror 243 "came here on his own to begin his own education," and so could not have perceived the juror to be more mature on that basis. Second, Sanchez argues that Lee could not have viewed being foreign-born as a sign of maturity because, had this been his view, he would not have struck Juror 201 (a 25-year-old male from Trinidad). Third, he argues that the district court improperly supplied Lee with the idea that the difference in age between 19 and 21 was meaningful. None of the arguments have merit.

Sanchez's first argument does not establish clear error. Even if Lee was ultimately mistaken in his assumptions about Juror 243's biography, what matters is whether the explanation genuinely

"reflected [his] true motive." Aranjo, 603 F.3d at 116. The district court observed Lee testify, including subject to an extensive cross-examination, and concluded that it was plausible that Lee had seen Juror 243's foreign origin as conferring greater maturity. The court's rejection of Sanchez's first argument is not clear error.

The second argument fares no better, and it misconstrues Lee's testimony. Lee did testify that he generally sought to exclude young potential jurors, but he did not testify that he perceived being foreign-born as an absolute exception to his rule on youth. Lee stated that in the particular case of Juror 243, he was looking for indications that he was "a little bit older than someone else in terms of life experiences" because of the diminishing number of challenges remaining. Examining the dynamics of the jury selection process, the district court correctly noted that Lee "had substantially more flexibility when considering juror[] 201," the Trinidadian, than when considering later jurors, as he had 12 out of 16 peremptory challenges remaining at the time. It was not clear error for the district court to credit the sincerity of Lee's consideration of Juror 243's foreign birth.

Sanchez's third argument is qualitatively different. He argues that the district court improperly supplied Lee with a way to distinguish between Juror 243 and Juror 261. Sanchez points to

- 14 -

a moment during cross-examination following a concession by Lee that both Jurors 243 and 261 were young college students and that their only "outward" ascertainable difference was race. The district judge at that point interjected: "Well, one was 19 and one was 21, right, do I have that right?" After both Sanchez's counsel and Lee responded affirmatively to the judge's question, the following colloquy between Sanchez's counsel and Lee occurred:

> Sanchez's Counsel: But you challenged people who were older than 21 for age, did you not?
>
> Lee: Yes. There is a distinction, but, as I said, my inclination would have been to strike [Juror 243] under all things being equal.
>
> Sanchez's Counsel: So the two years was not the defining difference for you?
>
> Lee: At that stage of the game, every possible distinction was relevant.

Although the district court does not refer to this particular exchange, Sanchez relies on Miller-El v. Dretke, 545 U.S. 231 (2005), to suggest that the trial judge improperly supplied Lee with the difference in age between the jurors as the reason for striking, id. at 252.

This argument lacks merit for a number of reasons. As a matter of law, any reliance on Dretke is misplaced. Dretke involved a Batson challenge in which the appellate court justified a prosecutor's strike based on a "rational basis" for his actions that the court supplied, without taking full account of the record.

- 15 -

Id. The Court held that neither trial nor appellate courts may disregard the record and "imagine a reason" for a prosecutor's actions. Id. That is not what happened here. Here, in concluding that Lee perceived a difference in maturity between Juror 243 and Juror 261, the district court recited ample record evidence, including Lee's testimony from before the contested exchange. The district court's conclusions do not rely on, or even mention, the disputed exchange. But even so, we note that the disputed statement that "every possible distinction was relevant," referring to the difference in the jurors' chronological ages, was made in response to opposing counsel's question and not that of the district judge. We simply do not have a case where after the fact the district court concocted an explanation from whole cloth without record support.[5] Given the highly deferential standard of review on questions of credibility, we have no trouble affirming the district court's finding that Lee regarded Jurors 243 and 261 as different based on differences other than race.

---

[5] To be clear, a trial judge has discretion to make inquiries of witnesses as necessary to facilitate a full and fair hearing. See Fed. R. Evid. 614(b); United States v. Melendez-Rivas, 566 F.3d 41, 50 (1st Cir. 2009). It is permissible in the normal course of a Batson hearing for a judge to ask clarifying questions and at times engage with witnesses directly. Indeed, the fact that the district judge here did so several times apart from the contested exchange further indicates that, seen in the context of a normal hearing, there was nothing prejudicial in the judge's question about the difference in age between Jurors 243 and 261.

Further, Lee's choice to keep Juror 243 but strike Juror 261 is also supported by his testimony concerning the importance of strategically using and preserving strikes in light of the dynamics of jury selection. As the district court noted, consideration of the number of jurors to be seated and the number of remaining challenges of either party is valid. Mensah, 737 F.3d at 802 (noting as a valid concern a prosecutor's cautiousness over a single remaining strike when faced with unknown upcoming jurors). Sanchez argues that Lee could not have so calculated the number of remaining challenges, unseated jurors, and characteristics of potential jurors. Lee explained his practice concerning these calculations and on cross-examination maintained, "I do it in every trial all the time. I'm constantly looking through the questionnaires." There is nothing improbable about a trial lawyer using such a practice. The district court's crediting of this explanation was not clearly erroneous.

Sanchez's remaining arguments do not convince us otherwise. Sanchez points to the fact that the prosecutor eliminated one-hundred percent of young black men from the venire. We have previously held that this is not alone sufficient to prove discrimination, especially where there are small numbers of potential jurors of the allegedly targeted group. See id. at 801 (cautioning against weighing heavily that prosecutor struck all Asian-Americans where only two were in venire); Caldwell v.

- 17 -

Maloney, 159 F.3d 639, 656 (1st Cir. 1998) (upholding peremptory strikes of all four potential jurors of one race).  Sanchez also points to Lee's failure to explain his use of a peremptory challenge during the original jury selection, but Lee was not required to provide such an explanation until one was requested of him.  Sanchez I issued such a request, and Lee has now duly offered his explanation.

We acknowledge both the difficulties in making a Batson determination on a cold record many years following the original jury selection and also the importance of protecting the right of every juror to serve and of every defendant to have a trial free of the taint of racial discrimination.  See Batson, 476 U.S. at 87.  But here the district court did not abuse its broad discretion as factfinder on matters of credibility in concluding that Sanchez has not proven that there was racial discrimination.  That ends the matter.

III.

For the reasons stated, we affirm the denial of the habeas petition.

- Concurring Opinion Follows -

- 18 -

**THOMPSON**, **Circuit Judge, concurring**. The majority opinion accurately sets forth the applicable law and cogently explains why, given our standard of review, we cannot reverse the district court's rejection of Dagoberto Sanchez's Batson challenge. Therefore, I reluctantly concur in the majority's result and reasoning. I write separately to point out that Sanchez's Batson challenge has traveled an arduous route through the state and federal courts and because of that historical journey, I am left with a queasy confidence in the decision we reach today. Let me explain.

When defense counsel first raised a Batson challenge in state court way back in September of 2006, the trial judge was ready with an immediate (and inappropriate) response. Without asking for the prosecution's justification, the judge gratuitously said in reference to the just-struck 19-year-old African American (Juror No. 261): "I think his youth and the fact that he's a full-time college student could be a problem." Sanchez v. Roden, 753 F.3d 279, 286-87 (1st Cir. 2014). With that, the judge not only put words in the prosecutor's mouth, but he also telegraphed what the court would consider to be acceptable, race-neutral reasons justifying the peremptory strike.

And it should come as no surprise that nearly eight years later, when finally called upon to explain why he struck this particular juror, the prosecutor seized upon the juror's "youth."

- 19 -

In doing so, the prosecutor did nothing more than parrot back the trial judge's unprompted suggestion.

How well this case illustrates the Massachusetts Supreme Judicial Court's warning that a trial judge who offers up his own reason for a prosecutor's peremptory strike "risks assuming the role of the prosecutor." Commonwealth v. Fryar, 610 N.E.2d 903, 908 (Mass. 1993). It takes no great amount of thought to conclude that, had the trial judge required a contemporaneous explanation for the prosecutor's strikes, my trust in having reached the correct outcome (whichever way it went) would be greatly increased. Unfortunately, we will never know what the prosecutor would have said in September 2006 had the trial judge not erred in his application of the Supreme Court's Batson protocol. As a result, there will always be a nagging question in my mind as to whether structural error occurred at Sanchez's trial which has not been detected or corrected. Cf. Snyder v. Louisiana, 552 U.S. 472, 477 (2008) (recognizing the trial court's "pivotal role in evaluating Batson claims" because "'the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge'" (alteration in original) (quoting Hernandez v. New York, 500 U.S. 352, 365 (1991) (plurality opinion))).

Now, Sanchez's habeas petition was essentially doomed when, following the district court's evidentiary hearing, the district judge "found [the prosecutor's testimony] to be credible

- 20 -

in all respects." Sanchez v. Roden, No. 12-cv-10931-FDS, 2015 WL 461917, at *7 (D. Mass. Feb. 4, 2015). And why did the judge believe the prosecutor's adoption of the trial judge's suggestion explained his peremptory challenges? Because "[h]is demeanor was professional and credible throughout" the proceeding. Id. Through this observation, the judge effectively said that he found a professional to be professional. But again, what else would be expected when the prosecutor went into the hearing not only having had almost eight years to consider what he would say, but also with the awareness of what the state trial judge considered to be a perfectly valid and acceptable justification for the strike?

To be sure, the district judge also noted that the prosecutor's testimony "was based in part on memory and in part on his routine empanelment practices, and [that] he endeavored to distinguish between the two as he testified." Id. He also gave a nod to defense counsel's "extensive cross-examination" of the prosecutor. Id. These factors, it appears, must have played contributory roles in the overall finding of credibility.

But the prosecutor's testimony was not exactly monolithic. On direct, he explained why he accepted Juror No. 243, the 21-year-old white college student from Russia, but not Juror No. 261, the 19-year-old black college student from Boston:

> I go through those [juror] questionnaires to
> determine how many of the remaining challenges
> I'm likely to have to use, and in that

- 21 -

particular instance, I took him, despite not wanting to take him, but I was -- there are a number of young jurors who I will take based upon what I consider to be indications on their questionnaire that might make them not fit their chronological age, which is to say that he was 21 years old, but I noted he was born in Moscow, I noted that he came here on his own to begin his own education, and so I thought if I had to take a young juror, that would be somebody who might be a better candidate than most.

Thus, the reason given for accepting one young college student while striking the other is that there was something "more" (my word, not the prosecutor's) in the white juror's questionnaire -- and which was absent from the young black man's -- that led the prosecutor to believe Juror No. 243 might be more mature than he would expect other 21-year-olds to be. As it turns out, the prosecutor's unequivocal testimony about this "more" -- that the questionnaire told him Juror No. 243 traveled to the United States "on his own to begin his own education" -- did not hold up on cross-examination.

After confirming that the white 21-year-old had been born in Moscow, Russia (as opposed to Moscow, Maine) the prosecutor had the following exchange with Sanchez's counsel:

Q. Okay. This is somebody who wouldn't have the same experience with our system of law as other citizens?

A. I don't know. All I know is that he was born in another country and was attending school in the United States.

Q. Okay. And what about that did you find beneficial? Was there something about him that overcame the fact that he was young?

A. Barely, yes. The fact that I was down to six challenges and looking at him, my inclination was to strike him, but was there anything specifically that said to me, [']oh, I want this person,['] not that I can remember. It was more of a hold-your-nose situation and take him because I thought somebody who came to this country to go to school at the age of 21 may have been chronologically a little bit older than someone else in terms of life experiences, and that's really what I'm looking at that somebody who has some level of maturity and life experience.

The prosecutor initially stood strong and maintained the position he took on direct, namely, that Juror No. 243 came to the United States on his own to attend college. But the very next exchange opened up a chink in the foundation:

Q. Well, he couldn't have come here to go to school, he had to be a citizen [to serve on the jury], correct?

A. I didn't mean that I knew his life history. I knew he was 21, and I knew that he was here attending school and he was born in another country.

This next colloquy brought the testimonial edifice tumbling down:

Q. The fact that the man was born in Russia, you don't know whether he came here at six days old, six months old, six, sixteen years old; you have no idea?

A. Correct, absolutely no idea.

So much for the prosecutor's professed belief that Juror 243 might be more mature than other 21-year-olds as a result of his having come to the United States on his own to further his education.

Nevertheless, seizing on this about-face to reject the district judge's credibility determination would overlook the fact that the prosecutor actually gave another reason for believing this particular 21-year-old might be more mature than his chronological age would generally indicate. After all, the prosecutor also said that he relied on the fact that the prospective juror had been "born in Moscow." Cross-examination did not substantially undercut this second reason. Indeed, he explained, "I thought somebody who came to this country to go to school at the age of 21 may have been chronologically a little bit older than someone else in terms of life experiences, and that's really what I'm looking at that somebody who has some level of maturity and life experience."

That Juror No. 243 was born in Moscow, Russia is uncontested on this record. And it's a fact that technically differentiates Juror No. 243 from Juror No. 261, who was born in the Boston area. Whether this ostensibly race-neutral fact[6] -- as

---

[6] Presumably, place of birth would only make a difference if the individual lived there beyond his or her early childhood. Had Juror No. 243 moved from Russia to the United States when he was, say, two years old, there is no reason at all to believe that his

- 24 -

opposed to one being white and the other black -- explains the prosecutor's exercise of his peremptory challenges depends entirely on the credibility of the prosecutor's testimony. The district judge, after hearing his testimony on direct and cross-examination, found it credible and determined that the prosecutor did not strike Juror No. 261 on account of his race.

This case is devoid of extrinsic evidence of racial discrimination. We do not, for example, have trial notes from the prosecutor indicating that race played a role in jury selection. We do not have evidence that the prosecutor manipulated trial procedures in an attempt to influence the racial makeup of the jury. See, e.g., Miller-El v. Dretke, 545 U.S. 231, 253-55 (2005) (commenting on the prosecutor's use of a "jury shuffle" to keep black members of the venire at the back of the line). Nor is there evidence of a longstanding tradition of racial discrimination in

_____

Russian birthplace could render him more mature than his chronological age or distinguish him from Juror No. 261. The prosecutor admitted, of course, that he has "no idea" how long Juror No. 243 lived in Russia. But, as the majority opinion correctly points out, under Batson the reason for a peremptory strike need not be correct, persuasive or even plausible, so long as it is race neutral. Moreover, once a race-neutral reason is advanced, the peremptory challenge will be allowed so long as the trial judge is convinced that the challenging party provided the real motivation for the strike, and that the reason was not offered merely to camouflage racial discrimination. Thus, what is important for our purposes here is not whether a young man who happened to have been born in Moscow is more mature than other young men of his age who had been born in Boston, but whether the prosecutor genuinely believed that to be possible. And the district judge found that he did.

- 25 -

the use of peremptory challenges in the prosecutor's office,[7] or evidence that prosecutors were encouraged to exercise peremptories so as to keep minorities off the jury. See id. at 263-66 (taking into account a particular county's "specific policy of systematically excluding blacks from juries," id. at 263). And nothing in the record clearly demonstrates that the prosecutor's proffered reason for accepting Juror No. 243 but not Juror No. 261 was pretextual. See id. at 240-52, 255-63 (comparing the prosecution's treatment and questioning of black versus white venire members at voir dire and concluding that "the implication of race in the prosecutors' choice of questioning cannot be explained away," id. at 263); see also Snyder, 552 U.S. at 485 (concluding that the justification offered by the prosecutor was pretextual after conducting a comparative juror analysis).

In sum, whether the prosecutor's strike of Juror No. 261 violated Batson comes down entirely to his credibility in explaining his strikes that day and, in particular, why he did not challenge Juror No. 243. We have said time and time again that making credibility determinations is a job for the district court, not something for us to do looking at a cold record. Absent other evidence in the record pointing to racial discrimination, we simply

---

[7] Although counsel has represented that this has been a problem in Suffolk County, the arguments of counsel are not evidence.

cannot say that the district judge clearly erred in accepting the prosecutor's explanation and upholding the peremptory challenge. This holds true even if any one (or all) of us, sitting as the trial judge, might have reached a contrary conclusion.

Finally, because a trial judge faced with a Batson challenge must consider the totality of the circumstances, it is appropriate for us to acknowledge them here. Although we are unable to say the district judge clearly erred in finding that the prosecutor's strike was not motivated by Juror No. 261's race, the end result is that all young, black men and young men of color in the venire -- indeed all those who resembled Dagoberto Sanchez -- found themselves dismissed at the behest of their own government. No other group of prospective jurors received such treatment.

The facts in this record certainly raise the judicial antennae. But given the standard of review, I can do no more than register my discomfort at having to affirm the denial of habeas relief even though the best evidence as to whether or not a Batson violation occurred -- the prosecutor's contemporaneous explanation -- has been irretrievably lost to us.